COX, WOOTTON, GRIFFIN,
HANSEN & POULOS LLP
Mitchell S. Griffin (SBN 114881)
Max L. Kelley (SBN 205943)
190 The Embarcadero
San Francisco, CA 94105
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

Attorneys for Defendants
DAN ROBIN CATALANO and the
Unnamed sailing vessel, Hull # CFZ0237TC700 &
CF #0237TP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MORELLI TAYLOR SPORTFISHING & MARINE SUPPLY, LLC, a California Limited Liability Company d.b.a. LEO'S SPORTFISHING,<br><br>Plaintiff,<br><br>vs.<br><br>DAN ROBIN CATALANO, an individual, *in personam,* Unnamed Sailing Vessel, Hull #CFZ0237TC700 & CF #0237TP, *in rem,* and Does 1-100, inclusive<br><br>Defendants. | Case No.: C07-04947<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO VACATE ORDER OF ARREST OR, ALTERNATIVELY, TO SET THE AMOUNT OF SECURITY FOR RELEASE OF THE VESSEL**<br><br>Date:  October 9, 2007<br>Time:  10:30 a.m.<br>Courtroom: 2, 5th Floor<br>Hon. Howard R. Lloyd |

### I. BASIS FOR THIS MOTION

Using this Court's *in rem* process, the Plaintiff has caused the Defendant's under-construction Vessel, upon which he lives, to be arrested. ***The arrest must be immediately vacated because this Court has no subject matter over the plaintiff's claims.*** None of the plaintiff's claims can possibly give rise to a maritime lien enforceable under admiralty jurisdiction, because the Vessel at issue is new, has never been in operation and is still under

construction. It is black-letter law that supplies or work provided to a new vessel under construction do not give rise to a maritime lien or maritime jurisdiction. *Thames Towboat Company v. The Francis McDonald*, 254 U.S. 242 (1920).

The Complaint filed by the Plaintiff suffers from other procedural and substantive defects, detailed below, that each additionally require vacation of the arrest and dismissal of the entire action.

## II. SUMMARY OF RELEVANT FACTS

Defendant Catalano moved back to California from Costa Rica in February 2007, so that he could pursue his business venture: building a replica 'pirate boat' (the Vessel at issue) that he intends to take back to Costa Rica in late 2007, where he will operate the Vessel as a charter business for tourists. He first began constructing the Vessel single-handedly in February 2007, starting with a steel hull which had never been waterborne. At the time he began constructing the Vessel, it was located several miles inland in Santa Cruz, California. Declaration of Dan Catalano ("Catalano Dec."), filed concurrently herewith, at ¶ 2.

After working on the Vessel alone through the months of February, March, and April, Catalano moved the Vessel to the water on or about May 8, 2007, when the unfinished Vessel was placed in the water at the "Visitor's Dock" in Santa Cruz Harbor. *Id.* at ¶ 3.

Plaintiff Morelli Taylor Sportfishing & Marine Supply, LLC, d.b.a. Leo's Sportfishing ("Leo's Sportfishing") is a business establishment located adjacent to the Visitors Dock. Leonardo Morelli (hereafter, "Morelli") is the owner of Leo's Sportfishing. *Id.*, ¶ 4.

On or about May 28, 2007, Catalano approached Morelli and asked if he could borrow Morelli's arc welder to work on the Vessel. Morelli told Catalano he could do the welding for Catalano and Catalano agreed. No mention of payment for the welding was made at any time by either Catalano or Morelli. After Morelli spent less than one hour on the Vessel doing welding he left the vessel. Catalano, upon inspecting the work done by Morelli, determined that he would have to redo the work completely himself. *Id.*, ¶ 5.

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-1600
FAX 415-438-4601

CAT.Buccaneer/

-2-                                    Case No.: C07-04947 HRL
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO VACATE ARREST

Thereafter, on several occasions during the month of June, Morelli offered to help Catalano with welding work on the Vessel, including welding the figurine on the bowsprit and welding metal bars supporting the bowsprit. Catalano agreed but, again, was dissatisfied with Morelli's work and had to redo it himself. Morelli also offered to weld two chain plates on the Vessel but Catalano turned down the offer. Morelli nevertheless boarded the Vessel at night and welded the chain plates without Catalano's knowledge. The next day, Catalano had to redo the chain plate welding, which had been done wrong, like every other item Morelli had done on the Vessel. At no time was any mention made of paying Morelli for the welding he had done on the Vessel. *Id.*, ¶ 6.

Later in June, Catalano (an experienced motorcycle mechanic) and Morelli agreed that Catalano would have Morelli's motorcycle painted and repaired in exchange for Morelli doing some non-welding rigging work on the Vessel. At that time, the Vessel not only needed to be rigged, it also lacked working engines, steering gear and electrical power. *Id.*, ¶ 7.

Over the next month or so, Catalano spent approximately 30 hours arranging for the repairs and painting of Morelli's motorcycle and paid $8,000 out of his own pocket for the paint job. As best he could, Catalano kept close track of the amount of time Morelli worked on the vessel. The work that Morelli performed on the Vessel during that time was sporadic, incomplete and woefully defective. In fact, Catalano had to redo all of the work Morelli performed. *Id.*, ¶ 8.

In July 2007, Catalano instructed Morelli to both stop working on the Vessel and to "stay away" from the Vessel altogether. To that point, Morelli had spent a total of 22 hours "working" on the Vessel, in exchange for Catalano's work on Morelli's motorcycle. *Id.*, ¶ 9.

Despite Catalano's instructions to "stay away" from the Vessel, Morelli thereafter continued coming aboard. In response, on or about August 18, 2007, Catalano complained to the Santa Cruz Harbor Police that Morelli was trespassing aboard his Vessel. The Harbor Police offered to, and did, tow the Vessel to another berth across the harbor and away from Morelli's dock and recommended that Catalano cease all contact with Morelli. Since that

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA 94105
TEL 415-438-4600
FAX 415-438-4601
CAT.Buccaneer/

time, Morelli has not set foot aboard the Vessel and Catalano has had no contact or communication with Morelli. *Id.*, at ¶ 10.

On September 25, 2007, the Vessel was arrested by the U.S. Marshal and turned over to a substitute custodian (the Santa Cruz Harbormaster) after this Court entered an Order of Arrest for the Vessel. Attached to the verified complaint filed by Morelli in support of the arrest is a letter, allegedly dated September 1, 2007, addressed to "Santa Cruz Harbor," with a list of dozens of expenses that Morelli purportedly incurred for the Vessel. The letter was never delivered to Catalano prior to being presented to this Court. *Id.*, at ¶ 11.

On the entire list, only one expense item was actually incurred for the Vessel (a $1,800 berthing fee that Morelli indeed paid for the Vessel). The remainder, if they were in fact incurred at all, have nothing to do with Vessel. *Id.*, ¶ 12.

The Vessel is currently located at the Santa Cruz Harbor, 135 5th Street, Santa Cruz, California, still under arrest.

### III.   LEGAL ARGUMENT

#### 1. The Vessel Is Under Construction, Therefore, This Court Lacks Subject Matter Jurisdiction

The Plaintiff has filed this *in rem* action and had the Vessel arrested pursuant to Federal Admiralty Supplemental Rule C, claiming that he provided supplies and services to the Vessel. However, the provision of supplies, labor, material or other necessaries to a new vessel for its original construction or outfitting do not give rise to a maritime lien. *Thames Towboat Company v. The Francis McDonald*, 254 U.S. 242 (1920); *Chase Manhattan Financial Services, Inc. v. McMillian*, 896 F.2d 452 (10th Cir. 1990); *Owens-Illinois, Inc. v. U.S. Dist. Ct. for the Western Dis.t of Washington*, 698 F.2d 967, 970 (9th Cir. 1983).

Plainly and simply, there is no federal maritime jurisdiction over any of the Plaintiff's claims. The arrest must be vacated and the case dismissed in its entirety.

Directly on point is *Thames Towboat Company v. The Francis McDonald*, 254 U.S. 242 (1920) in which the plaintiff sought "to recover for alleged supplies furnished and repairs made to the schooner "Francis McDonald," a vessel afloat but still under construction –

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO SAN FRANCISCO, CA 94105
TEL 415-438-1600
FAX 415-438-4601
CAT.Buccaneer/

-4-   Case No.: C07-04947 HRL
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO VACATE ARREST

exactly like the Vessel at issue in this case. *Id.*, at 242. The Supreme Court held, unequivocally, that such claims do not give rise to maritime jurisdiction and dismissed the case for lack of subject matter jurisdiction.

As the Court stated in *Chase Manhattan Financial Services, Inc. v. McMillian*, 896 F.2d 452 (10th Cir. 1990):

> In American admiralty law the existence of a maritime lien is synonymous with the scope of admiralty jurisdiction....It is an established principle of American admiralty law that contracts for building a ship, or supplying materials for the original construction of a ship, are not 'maritime' contracts within the province of admiralty jurisdiction....'The Supreme Court so held in 1857 in *People's Ferry Co. v. Beers*, [61 U.S. (20 How.) 393, 15 L. Ed. 961 (1857)], and has followed that ruling both in dicta and decision in every subsequent case in which the subject has been presented or reference to it made.'...
>
> The necessary corollary to this principle is that contracts for building or supplying materials for the original construction of ships do not create 'maritime' liens because such contracts are not 'maritime' contracts. ... Even after a ship has been launched, but before it is sufficiently advanced to function as designed, any labor, materials, or equipment furnished to the ship that are necessary for its completion do not give rise to "maritime" liens.

896 F.2d at 457 (multiple internal citations omitted).

The Order for Arrest was based on Plaintiff's *ex parte* application for a warrant of arrest, brought under Supplemental Rule C and the Plaintiff's Verified Complaint. However, at all times relevant to this action, the Vessel has been under construction. Even at this time, construction of the Vessel has not been completed, the Vessel is not seaworthy and is unable to move under its own power. Catalano Dec., ¶ 7.

### 2.  The Complaint is Also Procedurally Fatally Defective

Even if one could possibly ignore that this Court has no subject matter jurisdiction over the Plaintiff's Complaint, the Complaint is so procedurally fatally defective it should be dismissed on that basis alone.

The Complaint does not contain a single jurisdictional allegation. None of the three separate causes of action alleged in the Complaint - Breach of Contract, Quantum Meruit, and Account Stated - or the underlying operative facts as pled - give rise to federal jurisdiction, much less federal admiralty jurisdiction.

In *GEA Power Cooling Systems, Inc. v. M/V Nurnberg Atlantic*, 748 F.Supp. 303 (E.D. Pa. 1990), the district court addressed this very procedural issue and dismissed the complaint at issue. The plaintiff in that case filed a verified complaint under federal maritime jurisdiction, alleging damage to goods transported by the defendants. The complaint's *in rem* cause of action sought to arrest the defendant vessel under Admiralty Supplemental Rule C. In dismissing the *in rem* claim the court said:

> Like the pleading of jurisdiction in a civil complaint, the pleading of a maritime lien in an admiralty complaint must be specifically alleged. Without such an averment, the Court cannot proceed on its own to determine if a lien exists . . . . As the Court of Appeal for the Eighth Circuit has held: 'The first step in an action in rem is the filing of a Verified complaint that describes the boat *and alleges that a maritime lien exists.*' *Goodman v. 1973 26 Foot Trojan Vessel*, 859 F.2d 71, 74 (8th Cir. 1988)

*Ibid.* (emphasis in original).

The court concluded that "a maritime lien must be specifically pleaded in an Admiralty complaint since an action in rem under [Rule C] only exists when enforcing a maritime lien." *Ibid.*

Here, plaintiff has not alleged any basis for this Court's jurisdiction,[1] much less the basis of this Court's admiralty jurisdiction, and much less the existence of a maritime lien. The fact is that he cannot plead admiralty jurisdiction or the existence of a maritime lien because this is a new vessel under construction.

The Order of Arrest should be vacated on this procedural basis alone.

### 3. Plaintiff's Claims Are Fraudulent And Fail To Satisfy His Burden of Presenting A *Prima Facie* Case For Arresting The Vessel

Under Admiralty Supplemental Rule E(4)(f) it is the plaintiff's burden to show why the arrest should not be vacated. "Plaintiff bears the burden of showing that 'probable cause' existed to arrest the vessel, which 'translates roughly to requiring that plaintiff show entitlement to a maritime lien,'" *Greger Leasing Corp. v. Barge PT. Portrero*, 2006 U.S.

---

[1] This failure violates both Fed. R. Civ. Proc. 8(a) which requires "a short and plain statement of the grounds upon which the court's jurisdiction depends. . ." and N.D. Civil L. R. 3-5 which requires a separate paragraph entitled "Jurisdiction" "identifying the statutory basis for federal jurisdiction and the facts supporting such jurisdiction."

Dist. LEXIS 18863, (N.D. Cal. 2006), citing *Newport News Shipbldg. and Dry Dock Co. v. S.S. Independence*, 872 F.Supp. 262, 265 (E.D. Va. 1994).

The bare allegations in the body of the Complaint patently fail to allege the existence and foreclosure of a maritime lien. Furthermore, not only are the operative allegations contained in the Complaint inadequate, the documentary evidence attached to the Complaint as Exhibit 1 is completely insufficient to establish a *prima facie* case for arrest, even if this matter did not involve a new vessel to which a maritime lien cannot even attach.

Page 1 and 2 of Exhibit 1 to the Complaint purports to be a letter from Plaintiff to Catalano, and an invoice for materials and labor relating to work plaintiff performed on the Vessel. Defendant Catalano in fact never received nor saw either the letter or the invoice before being served with the Complaint. Catalano Dec., ¶ 11.

As for the itemized billing history attached as 3 and 4 of Exhibit 1 ("Buccaneer Expenses"), Defendant Catalano also never received or saw this document before being served with the Summons and Complaint. Nevertheless, only one item listed on those pages relates to the Vessel. Catalano Dec., ¶ 12.

A cursory examination of the items listed on the document reveals that out of 65 line items, only 25 bear any kind of description. Where descriptions are supplied, the descriptions are insufficient to determine the nature and propriety of the purported charge. For example, the first three out of four descriptions on the first page are simply "Building Supplies." The first two descriptions on the second page are simply "Building Repairs."

Furthermore, to the extent that the few descriptions can be interpreted, the items described were clearly not purchased for the Vessel. For example, the item dated 5/23/2007 to "Hawaii Fiberglass" was for a *fiberglass* panel plaintiff used to repair a third-party's boat. The Defendant's Vessel is **steel construction and does not utilize any fiberglass components**. *Id.*, at ¶ 13; *see also,* Declaration of Sean McIntyre, filed herewith. The item dated 5/29/2007 to Santa Cruz Paint was **green and white paint**. The Vessel **does not have any portion painted green or white**; the Plaintiff's own boat, however, is painted green and white. The 6/8/2007 entry "Wet/Dry vacs" were used in the Plaintiff's own shoreside office,

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

CAT.Buccaneer/

1  and the "rivets" were used in his own boat's bait tanks. The 6/22/2007 entry of "pipe
2  hanger" and "conduit" were used to run electrical wiring from Plaintiff's office to his fuel
3  dock and had nothing to do with the Vessel. The paint purchased from Kelly Moore on
4  7/9/2007 was **brown**, however, ***there is nothing painted brown on the Vessel***. The
5  7/16/2007 entry for "Impeller, corrosion X" was equipment installed aboard a third-party's
6  vessel that the Plaintiff was rebuilding. As to the "Parts etc." on 6/30 and 7/16/2007, these
7  descriptions are too vague to even address. Catalano Dec., ¶ 14; McIntyre Dec..

8  Furthermore, the Plaintiff appears to be claiming at least 400 hours of labor totaling
9  $34,000, yet he has failed to provide a single time card or scrap of paper evidencing a single
10 one of those hours he allegedly worked aboard the Vessel. Furthermore, the amounts
11 claimed that bring the typewritten total of $49,710.10 up to the total claim amount of
12 $60,779.03 are in a handwritten scrawl that is illegible and unintelligible.

13 Ignoring the fact that this Court does not even have subject matter jurisdiction over
14 the case, and ignoring the fatal procedural errors in the Plaintiff's pleadings, the "evidence"
15 presented with the Complaint does not begin to establish a *prima facie* case for arresting the
16 Vessel.

17 The Order of Arrest should be vacated on this basis alone.

### 4. Justice Weighs In Favor Of Vacating The Order Of Arrest

19 Dan Catalano has invested everything he owns of value into this nascent business
20 venture. Catalano Dec., ¶ 15. He has no house and was living aboard the unfinished Vessel
21 before it was arrested. He had to leave most of his clothes and possessions aboard the Vessel
22 when it was arrested. Catalano has committed the Vessel to return to Costa Rica to begin
23 operating charters by December 1, 2007, and has to complete construction of the Vessel,
24 outfit her for the voyage and be ready to leave Santa Cruz by the beginning of November,
25 2007 in order to arrive in Costa Rica on time. Catalano estimates there is at least four weeks
26 worth of work left to complete the Vessel and make her ready for sea, including completing
27 installation of the engines, steering gear, generators, and sail rigging. Id., ¶16.

If the Vessel stays under arrest, Catalano will not have any source of income and will be put at risk of never recouping his substantial investment in the Vessel because he will not be able to honor his commitments in Costa Rica and may lose a once and only chance-in-a-lifetime business opportunity. On the other hand, if the Vessel is released, the Plaintiff can still pursue a civil suit against Catalano if he so chooses.

Equity and fairness alone dictate that the arrest should be vacated

### 5. If The Court Does Not Vacate The Arrest, The Amount Of Security To Release The Vessel Should Be Set Appropriately

Supplemental Admiralty Rule E(5)(a) provides that the defendant may post a special bond to release an vessel under arrest and that the amount of the bond shall be fixed by the court "at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs." As set out in detail above, the Plaintiff's claims for material costs are insufficient to determine what was allegedly purchased and for what purpose aboard the Vessel, and the Defendant's sworn testimony refutes many of the items for which a rough description is stated in the "invoice." Furthermore, there is absolutely no backup documentation for any of the hours the Plaintiff is claiming he worked on the Vessel.

Based on the scant evidence before the Court, Defendant submits that the Plaintiff's claim "fairly stated" totals less than $2,000. Factoring in interest and costs, the Defendant submits that, if the Court does not vacate the arrest altogether, the amount of security to be deposited into Court in order to release the Vessel should be no more than $5,000.

Under Supplemental Admiralty Rule E(5)(a), upon the posting of the required security by the defendant, the property (here, the Vessel) *"shall* be released." Therefore, once the security required by the Court has been deposited, the Vessel *must* be released from arrest. *Gerard Constr., Inc. v. Motor Vessel Virginia*, 480 F. Supp. 488, 491 (D. Pa. 1979); *Worldwide Carriers, Ltd. v. Aris S.S. Co.*, 290 F. Supp. 860, 863 (S.D.N.Y. 1968)

COX, WOOTTON, GRIFFIN, HANSEN & POULOS LLP
190 THE EMBARCADERO SAN FRANCISCO, CA 94105
TEL 415-438-4600 FAX 415-438-4601
CAT.Buccaneer/

-9-   Case No.: C07-04947 HRL
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO VACATE ARREST

## IV. CONCLUSION

As discussed above, the Court should vacate the Order of Arrest and dismiss the case in its entirely because the Court lacks subject matter jurisdiction over the Plaintiff's claims. Even if this were not the indisputable fact, the case should also be dismissed because:

1. The plaintiff has failed to properly allege the existence and foreclosure of a maritime lien;
2. The allegations in the Complaint do not satisfy the Plaintiff's burden to make a *prima facie* showing of reasonable grounds for the arrest of the Vessel; and
3. Justice and equity weigh in favor of releasing the Vessel.

If for any reason the Court finds that it is unable to vacate the arrest, pursuant to Supplemental Admiralty Rule E(5), the Defendant respectfully submits that the security for release of the Vessel should not exceed $5,000.

Respectfully submitted,

Dated: October 3, 2007

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, Defendants
DAN ROBIN CATALANO and the
Unnamed sailing vessel, Hull # CFZ0237TC700
and CF #0237TP

By: _____
Mitchell S. Griffin
Max L. Kelley

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

CAT.Buccaneer/

## PROOF OF SERVICE

Case:  *Morelli Taylor Sportfishing & Marine Supply, LLC v. Dan Robin Catalano, et al.*

Case No.:  **USDC, Northern District, Case No.: C-07-04947**

I am employed in the City and County of San Francisco by the law firm of COX, WOOTTON, GRIFFIN, HANSEN & POULOS, LLP, 190 The Embarcadero, San Francisco, California 94105. I am over the age of 18 years and not a party to the within action.

On October 3, 2007, I served the attached document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO VACATE ORDER OF ARREST OR, ALTERNATIVELY, TO SET THE AMOUNT OF SECURITY FOR RELEASE OF THE VESSEL**

on the parties, through their attorneys of record, by placing copies thereof in sealed envelopes (except facsimile transmission(s)), addressed as shown below, for service as designated below:

(A)  <u>By First Class Mail</u>:  I caused each such envelope, with first-class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U.S. mail in San Francisco, California, for collection and mailing to the addressee on the date indicated.

(B)  <u>By Personal Service</u>:  I caused each such envelope to be personally delivered to the addressee(s) by a member of the staff of this law firm on the date indicated.

(C)  <u>By Messenger Service</u>:  I caused each such envelope to be delivered to a courier employed by NATIONWIDE LEGAL, with whom we have a direct billing account, who personally delivered each such envelope to the addressee(s) on the date indicated.

(D)  <u>By Federal Express</u>:  I caused each such envelope to be delivered to Federal Express Corporation at San Francisco, California, with whom we have a direct billing account, to be delivered to the addressee(s) on the next business day. I deposited each such envelope/package at the Three Embarcadero Center location of Federal Express Corporation.

(E) <u>By Facsimile</u>: I caused such document to be served via facsimile electronic equipment transmission (fax) on the party(ies) in this action by transmitting a true copy to the following fax numbers:

| SERVICE | ADDRESSEE | PARTY REPRESENTED |
| --- | --- | --- |
| C | Joseph W. McCarthy<br>400 Reed Street<br>P.O. Box 58032<br>Santa Clara, CA 95050<br>Tel: (408) 727-4111<br>Fax: (408) 727-4343 | Attorneys for Plaintiff<br>Morelli Taylor Sportfishing<br>& Marine Supply, LLC |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed this October 3, 2007, at San Francisco, California.

_____
Zoe Conner

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL 415-438-4600
FAX 415-438-4601

IMU.Goldsworthy/2416

Case No.: C-06-4025MHP